NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| C.S. and S.S. o/b/o K.S., | Civil Action No.: 16-3294 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| MONTCLAIR BOARD OF EDUCATION, | |
| Defendant. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Motion for Summary Judgment by the Defendant, Montclair Board of Education ("Defendant"). (ECF No. 40). Plaintiffs, C.S. and S.S. ("Plaintiffs"), have opposed Defendant's motion and Cross-Moved for Partial Summary Judgment. (ECF No. 41). Defendant has opposed Plaintiffs' cross motion. (ECF No. 42). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.1. For the reasons stated herein, Plaintiffs' Cross Motion is denied and Defendant's Motion is granted.

I.  **Factual Background**

Plaintiffs are the parents of minor child K.S. (ECF No. 40-2 ("Def. SMF") ¶ 1). Plaintiffs and K.S. reside within the geographical school area served by Defendant. (Def. SMF ¶ 2; ECF No. 41-1 ("Pl. SMF") ¶ 5). This case centers around a May 16, 2014 Individualized Education Plan ("IEP") prepared by Defendant for K.S., who, was eight years old and would have been entering second-grade in the school district at the time the IEP was prepared. (Def. SMF ¶¶ 3-4).

1

K.S. is a student with physical and mental impairments. (Pl. SMF ¶¶ 3,7). Shortly after his birth at 30 weeks gestation, K.S. suffered a traumatic brain injury. (Id. ¶ 26). From the early age of three months, K.S. began receiving support from occupational and physical therapists, among other professionals. (Id. ¶¶ 28-30).

K.S. was first enrolled in the Montclair School District in 2010 for a part-time preschool program. (Pl. SMF ¶ 12). At that time, Defendant's Child Study Team classified K.S. as "Preschool Disabled" and therefore eligible for services pursuant to the Individuals with Disabilities Education Act ("IDEA"). (Id.). After several days, however, Plaintiffs decided to remove K.S. from Defendant's part-time preschool program and enroll him in a full day pre-K program. (Pl. SMF ¶ 14). In 2012, Plaintiffs re-enrolled K.S. in the Montclair School District. (Def. SMF ¶ 14). During the academic years of 2012 through 2014, Plaintiffs worked with Defendant to develop various IEPs that would meet K.S.'s educational and physical needs. (Def. SMF ¶¶ 16-26). While the IEP team revised and amended the IEP several times, it is the IEP proposed to Plaintiffs in May 16, 2014 —for K.S.'s second-grade year— that is at the center of this dispute.

Under the May 16, 2014 proposed IEP, K.S. would "receive all academic classes in a small, self-contained, [kindergarten through second-grade ("K-2")] classroom." (Def. SMF ¶ 32). The proposed K-2 classroom was to have approximately twelve students, and was to be taught by Colleen Markham, a certified special education teacher. (Id. ¶ 34). The IEP also provided for physical and occupational therapy sessions. (Id. ¶ 33).

K.S.'s Parents were not satisfied with the May 16, 2014 IEP. (Pl. SMF ¶ 143-45). Accordingly, they enrolled K.S. at Winston Preparatory School ("Winston Prep") on July 25, 2014,

and notified the District of same on August 4, 2014. (Def. SMF ¶¶ 43-44). On September 14, 2014, K.S. began his education at Winston Prep. (Id. ¶ 46).

## II. Procedural History

On June 11, 2014, the Parents filed for mediation with Defendant. (Def. SMF ¶ 42). The Parties were unable to resolve the matter through mediation. (Pl. SMF ¶¶ 8-9). On August 6, 2014, Plaintiffs filed an Amended Petition with the New Jersey Department of Education in which they requested that K.S. be placed in Winston Prep and that they be reimbursed for tuition. (Def. SMF ¶ 6). Defendant's filed an Answer to Plaintiffs' Amended Petition on October 10, 2014. (Id. ¶ 7). The matter then was tried before New Jersey Administrative Law Judge Leland S. McGee ("ALJ") over the course of four days. (Id. ¶ 8). During the trial, ALJ heard testimony from nine witnesses and admitted a number of exhibits into evidence. (Id.). The record was closed on September 21, 2015. On May 19, 2016, ALJ issued a decision on this matter. (Id. ¶ 9).

ALJ McGee framed the issues before him as follows: (i) whether the school district committed a procedural violation that denied K.S. a free, appropriate public education ("FAPE"); and (ii) whether its proposed 2014-2015 school year IEP offered FAPE, or specifically, a 'meaningful benefit' to K.S. given his disabilities, such that Plaintiffs are not entitled to reimbursement or tuition and related expenses for unilateral placement at a private school without the district's consent. (ECF No. 40-4 ("ALJ Op.") at 3). In short, ALJ McGee found that Defendant's IEP offered K.S. a FAPE and accordingly denied Plaintiffs' claim for reimbursement of K.S.'s tuition at Winston Prep. (Id. at 34).

The IDEA provides that a party aggrieved by the administrative procedures shall have the right to appeal that determination to the district court. 20 U.S.C. § 1415(i)(2)(A). Accordingly, on June 7, 2016, Plaintiffs filed the instant action appealing the ALJ's findings.

3

The Parties have cross-moved for summary judgment. Defendant seeks a judgment "affirming Judge McGee's determination that the Proposed IEP was designed to confer a meaningful educational benefit upon K.S. and/or, in the alternative, finding that Winston Prep does not offer[] K.S. an appropriate program designed to meet all of his individualized educational needs." (Def.'s Mov. Br. at 2). Plaintiffs, on the other hand, seek judgment from this Court: (1) reversing ALJ's May 19, 2016 Final Decision, in its entirety; (2) holding that the Board failed to meet its burden of proving that the May 16, 2014 IEP and proposed placement in the K-2 self-contained class would provide K.S. with a FAPE as required by the IDEA, Section 504, and the ADA; (3) ruling that Winston Prep does offer K.S. a FAPE and directing the District to place K.S. there moving forward, and; (4) reimbursing Plaintiffs for the cost of K.S.'s placement in Winston Prep, including tuition, transportation and other expenses. Finally, Plaintiffs seek reasonable attorneys' fees, costs, expenses, and expert expenses incurred during the course of the administrative procedures and in connection with the pending action.

### III. Legal Standard

#### A. Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure if "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (a) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

**B. Individuals With Disabilities Education Act ("IDEA")**

The IDEA is a "comprehensive scheme of federal legislation designed to meet the special educational needs of children with disabilities" and it provides federal funds to assist states "in providing educational services to children with disabilities," subject to the condition "that states meet a number of substantive and procedural criteria." *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 338 & n.4 (3d Cir. 2003). Two important concepts within the IDEA are FAPE and IEP. The IDEA provides for reimbursement and compensatory education and sets a process for relief.

1. Free, Appropriate Public Education ("FAPE")

The IDEA requires those states that "provide special education funds [and that] are eligible for federal funds to implement state-wide special education programs that guarantee a FAPE to

eligible disabled children." *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 232 (3d Cir. 2013) (citing 20 U.S.C. § 1412(a)(1)(A)). According to the Supreme Court, a FAPE consists of "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 188-89 (1982) (summarizing 20 U.S.C. § 1401(9)). There is a preference for "mainstreaming," meaning that a child should be placed in the least restrictive environment that will provide him with a meaningful educational benefit. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 390 (3d Cir. 2006).

### 2. Individualized Education Program (IEP)

The "centerpiece" of the IDEA is the IEP. *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010). There are numerous procedural and substantive criteria that must be met for an IEP to be deemed satisfactory. *See* 20 U.S.C. § 1414(d). "The IDEA does not set forth definitive guidelines for the formulation of an IEP, but at a minimum, [t]he IEP must be 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 71 717 (3d Cir. 2010) (citations omitted). "The right to a FAPE ensures that students with special education needs receive the type of education that will 'prepare them for further education, employment, and independent living.'" *Id.* (quoting 20 U.S.C. § 1400(d) (1)(A)). However, school districts are not required to "maximize the potential" of each student. *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013) (citations omitted). School districts work with parents to design the IEP, which "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Ridley Sch. Dist. v. MR.*, 680 F.3d 260, 269 (3d Cir. 2012) (internal quotation marks omitted); *see*

6

*also* 34 C.F.R. § 300 *et seq.* (relevant federal regulations); N.J.A.C. § 6A:14 *et seq.* (New Jersey's codification of the IDEA requirements, which follow the federal requirements).

### 3. Reimbursement and Compensatory Education

The IDEA allows for reimbursement. *See Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985) ("[W]e are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case."); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii). To be eligible for reimbursement, a district must have failed to provide a FAPE, and the placement must be proper. *Id.* A private placement is "proper" if it (1) is "appropriate," *i.e.*, it provides "significant learning" and confers "meaningful benefit," and (2) is provided in the least restrictive educational environment. *Lauren W. ex rel. Jean W v. DeFlaminis*, 480 F.3d 259, 276 (3d Cir. 2007) (citation omitted).

### 4. Process for Relief under the IDEA

"When a party objects to the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse: [i]t requires that a State provide [a]n opportunity for any party to present a complaint ... with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [a FAPE] to such child." *Winkelman ex rel Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007) (quoting 20 U.S.C. § 1415(b)(6)). In practice, this takes the form of an administrative proceeding centered around an "impartial due process" hearing, 20 U.S.C. § 1415(f)(1), after which "the IDEA permits an aggrieved party to bring a civil action in any court." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013) (citing 20 U.S.C. § 1415(i)(2)(A)).

## C. Standard of District Court's Review of Administrative Law Judge's Conclusions

In reviewing an administrative law judge's decision under the IDEA, this Court applies a modified *de novo* review, giving "due weight and deference" to the administrative findings. *D.S.*, 602 F.3d at 564. Factual findings from the proceedings below receive the benefit of *prima facie* correctness. *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3rd Cir. 2004). Also, if the administrative law judge heard live testimony and made credibility determinations, such determinations are given special weight and this Court may disturb them only upon a finding that non-testimonial extrinsic evidence justifies a contrary conclusion. *D.S.*, 602 F.3d at 564-65. Credibility determinations by an administrative law judge can include implicit decisions indicated in the record by acceptance of evidence in the administrative law judge's opinion. *Id.* at 566 n. 7. A district court is not permitted to impose its own theories regarding educational methods upon the states. *Id.* at 564.

## IV. Analysis

After examining the statements of facts and legal arguments submitted by both parties, this Court concludes that the arguments boil down to four main areas of debate: (i) the ALJ's credibility determination, (ii) the procedural and substantive appropriateness of the District's May 16, 2014 IEP as a FAPE, (iii) whether Plaintiffs can be reimbursed for enrolling in Winston Prep, and (iv) whether Defendant discriminated against K.S. under Section 504 of the Rehabilitation Act of 1973. This Court will analyze each of these arguments in turn.

### A. ALJ Credibility

After hearing the testimony of eight witnesses over the course of several days, the ALJ issued an opinion in Defendant's favor. The ALJ first provided a "summary of facts and procedural history," in which he included descriptions of each of the Parties' witnesses as well as a detailed

history of K.S.'s prior involvement with Defendant, containing iterations of IEPs. (ALJ Op. at 8-18). The ALJ then summarized the testimony of the various witnesses with respect to the adequacy of the May 16 2014 IEP. (ALJ Op. at 21-26). In its conclusion, the ALJ then determined that the May 16 2014 IEP was appropriate for K.S. and that it was in the least restrictive environment, regardless of Plaintiffs' belief that Winston Prep was a "better" option for their child. (ALJ Op. at p. 27). ALJ McGee based this determination in part on the fact that Defendant made repeated adjustments to the program to accommodate K.S.'s academic and therapeutic needs consistent with the expert testimony of Plaintiffs' witnesses, including physically modifying the school building. (Id.).

Plaintiffs nevertheless argue that the decision of the ALJ should be overturned because he did not explicitly analyze the credibility of any witnesses in his opinion. (ECF No. 41 at 7). According to Plaintiffs, ALJ McGee should have specifically stated which portions he found not credible and explained his reasoning. (Id.) (referencing *G.S. v. Cranbury Twp. Bd. Of Educ.*, No. 10-774, 2011 WL 1584321 (D.N.J. Apr. 26, 2011)). Instead, according to Plaintiffs, the ALJ merely stated his conclusions, mentioning the word "credibility" only once and never elaborated on the testimony he found credible. (Id.).

The aforesaid credibility standard offered by Plaintiffs is misplaced. As stated above, credibility can be implicitly determined by an ALJ's acceptance of evidence. *D.S.*, 602 F.3d at 566 n.7. As Defendant has appropriately pointed out, the credibility determination in this case was fairly straightforward: Plaintiffs presented two witnesses who directly contradicted the Defendant's position on the proposed IEP. (ECF No. 40 at 5-6). When ALJ ruled in favor of Defendant and summarized the various testimony, he implicitly determined the credibility and weight of each witness and clearly found Plaintiffs' witnesses less persuasive. (Id. at 6-7). Thus,

9

it is not material that the ALJ did not give a more detailed analysis on the credibility of each of the witnesses.

Therefore, applying the proper standard, Plaintiffs have not offered sufficient evidence to overrule the ALJ's credibility determination. If ALJ McGee heard live testimony and made credibility determinations, as apparently he did here, such determinations are given special weight and this Court may disturb them only if this Court finds that non-testimonial extrinsic evidence justifies a contrary conclusion. *D.S.*, 602 F.3d at 564. In this case, Plaintiffs' credibility arguments was limited to the analysis of the testimony of various witnesses, which qualifies as testimonial. (*See* ECF No. 41 at 9). This Court previously dealt with a similar scenario in *New Milford Bd. of Educ. v. C.R.*, No. 09-328, 2010 U.S. Dist. Lexis 61895, 10-11 (D.N.J. Jun. 22, 2010), and found that a credibility argument based solely on the testimony of an opponent's witness plus cross examination did not justify rejecting the ALJ's determinations. The aforesaid conclusion was partially based on the benefit the administrative law judge had in hearing the testimony firsthand. *Id.* Here, given the fact that Plaintiffs' argument is based on testimonial evidence, there are no material facts that overcome the due deference afforded ALJ's credibility determination.

### B. FAPE Analysis

This Court also rejects Plaintiffs' arguments concerning the May 16 2014 IEP. Congress does not define what is a FAPE, the Supreme Court however has interpreted this requirement to mean the school district must prove the IEP offers an education "reasonably calculated to provide meaningful educational benefit to the child," which is more than *de minimums*. *Rowley*, 458 U.S. at 192. Considering an IEP's appropriateness is a question of fact, the administrative law judge's determination should be considered *prima facie* correct in order to afford the administrative law judge due weight. *Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199.

In this case, Defendant was proposing in the May 16, 2014 that K.S.'s second grade education consist of a self-contained class of no more than twelve students for academics, integrated individual/small group physical therapy, a social skills group, and the remainder of the day in general education classes. (ECF No. 40 at 11-12). The self-contained classroom would have four paraprofessionals and led by a certified special education teacher with ten years' experience working in this kind of classroom. (Id. at 12). As discussed in the previous section, *supra* IV.A, ALJ McGee found this purposed IEP to be appropriate and ruled in favor of Defendant.

Plaintiffs raise both a procedural violation and a substantive appropriateness argument against the May 16 2014 IEP. This Court finds that neither argument to be persuasive given the due weight that must be afforded to an ALJ's factual determinations.

### 1. Procedural Violation

Plaintiffs' first argument is that Defendant committed a procedural violation depriving K.S. of a FAPE when it did not allow Plaintiffs to observe Defendant's proposed placement. (ECF No. 41 at 10). As Plaintiffs state in their brief, a procedural violation deprives a student of a FAPE when it (i) impedes the child's right to FAPE, (ii) significantly impedes the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to their child, or (iii) caused a deprivation of educational benefits. (ECF No. 41 at 11 (citing 20 U.S.C.§1415 (f)(3)(E); 34 C.F.R. 300.513(a)(2); N.J.A.C. 6A:14-2.7; *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 67 (3d Cir. 2010))). Here, Plaintiffs argue their opportunity to participate in decision making was significantly impeded when they were denied the ability to observe the self-contained classroom in Defendant's May 16 2014 IEP. (ECF No. 41 at 11 (relying on the undisputed testimony of Ruth Rohrer-Orozco and S.S.)).

11

Even if these actions did amount to a procedural violation, this Court, like the ALJ before it, is unpersuaded that Plaintiffs' inability to observe the proposed self-contained class impeded their decision making or prejudiced K.S.'s education. (*See* ALJ Decision at p. 30). Indeed, the May 16, 2014 IEP contained many of the recommendations and modifications made by Plaintiffs' privately retained neuropsychiatrist, Dr. Jane Healy. (ECF No. 40 at 15). Specifically, the proposed IEP included many of Plaintiff's concerns, some of which were K.S.'s weakness in executive functioning, receiving metacognition strategies, and teachers with experience teaching students with traumatic brain injury. (ECF No. 40 at 17). Furthermore, Plaintiffs attended all relevant meetings and were given opportunity to voice their concerns. (*See* Id.). Though Plaintiffs did not observe the self-contained classes, the case manager gave them a general idea by explaining what it would look like and how it would be implemented. (Id.). Based on this record, Plaintiffs nevertheless were involved in every part of the decision making process. Thus, in this light there is no evidence Plaintiff's inability to observe the self-contained class room was a significant impediment depriving K.S. of a FAPE.

2. Appropriateness of IEP

The second issue Plaintiffs raise is whether the proposed May 16, 2014 IEP was reasonably calculated to lead to meaningful progress in K.S.'s unique areas of need. As Plaintiffs correctly identify, K.S. undisputedly has a host of very serious disabilities either directly related to or correlated with his traumatic brain injury. (ECF No. 41 at 23-24). These disabilities include reading and writing, math skills, weak working memory, and distractibility. (Id.). Both the Plaintiffs and Defendant agree that K.S. needed a smaller setting, decreased distractions, increased individualized academic support, and improved ability to work independently and with consistency. (ECF No. 40 at 11; ECF No. 41 at 25). Though the parties agree regarding the

aforementioned needs, Plaintiffs allege that the District's plan nevertheless fell short in several ways. First, Plaintiffs assert that although the self-contained class is smaller than the general class, it does not offer one-on-one support. (ECF No. 41 at 25-26). Second, the IEP does not account for K.S.'s distractibility. (Id.). Third, Plaintiffs argue that important aids were missing from the IEP such as a scribe, strategies for K.S.'s memory issues and processing speed, and other modifications from the expert testimony. (Id. at 28). Finally, Plaintiffs assert a need for consistency in the strategies and support that is being offered, and are concerned that the various teachers involved in Defendant's IEP are not given any time for joint planning and communication to achieve this need. (Id. at 9).

Despite Plaintiffs' concerns, ALJ McGee determined that the IEP conferred a meaningful benefit to K.S. and would qualify as a FAPE. (ECF No. 40 at 13). This determination makes sense when one considers that in most regards Defendant's IEP lined up exactly with the recommendations Plaintiffs' experts purposed. (ECF No. 40 at 10). As stated above, Defendant relied heavily on both Plaintiffs' concerns and the expert report created by Dr. Healy. (Id. at 15). Furthermore, both of Plaintiffs' experts – specifically Dr. Healy's reports and Mishkin's factual findings – supported the appropriateness of the May 16, 2014 IEP. (*See* Id. at 10-13 (explaining that Dr. Healy's report did not conclude that the District's treatment up till that point had been inappropriate, and Mishkin eventually conceded the IEP was appropriate)).

Defendant contends that K.S. would receive adequate individual attention because the students are divided by skill level and the teachers have ample time to give appropriate care. (Id. at 13). Furthermore, Defendant argues that as to distractibility concerns, though Plaintiffs' expert found the self-contained class visually stimulating, she also commented on how focused and well behaved the children were. (Id. at 12). It may be true that some aid would be missing from the

classroom, but plenty was provided including four paraprofessionals lead by a special education teacher with ten years' experience working in the self-contained classroom. (Id.). Defendant also points out that it provided additional aid through physical modifications to the building to support K.S.'s needs. (ALJ Decision at p. 27).

This Court finds that while the IEP purposed by Defendant may not have been perfect, ALJ McGee correctly determined that it would definitely meaningfully benefit K.S.'s education, which is what the FAPE standard requires. As previously discussed, the ALJ's factual determinations are to be taken by this Court as *prima facie* correct. Here, there is plenty of evidence to support ALJ McGee's decision and based on the record before this Court nothing seems to properly contradict his findings. (Id. at 13). Therefore, this Court finds that the IEP was meaningfully beneficial, and that, the May 16 2014 IEP was appropriate both procedurally and substantively and thus qualified as a FAPE.

### C. Reimbursement for Winston Prep

This Court finds that Plaintiffs are not entitled to reimbursement for K.S. attending Winston Prep. IDEA gives the courts authority to grant appropriate relief, including the reimbursement of parents for the cost of a private school placement when (i) the school district had failed to provide the child with an appropriate IEP and (ii) the private placement would meet the child's needs. *Sch. Comm. of the Town of Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359, 370 -71 (1985). This standard is still applied when the child is now in private school but previously received special education under the authority of a public agency. *See* 20 U.S.C. § 1412(a)(10)(C)(ii).

As discussed in the previous section, *supra* Part IV.B, Defendant's May 16 2014 IEP was appropriate and so the first condition for reimbursement cannot be met. Thus, no further analysis is required to conclude that Plaintiff cannot be reimbursed. This Court, therefore, finds that

Plaintiffs are not entitled to summary judgment as to its IDEA claims, that ALJ's decision shall not be disturbed, and that Defendant is entitled to summary judgment.

## D. Section 504 Discrimination

Similarly, this Court finds against Plaintiffs' Section 504 claims. Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against qualified individuals with disabilities by any "program or activity receiving Federal financial assistance." 29 U.S.C. § 794; 34 C.F.R. 104.1. In order to make this claim, Plaintiffs must establish that K.S. "(i) has a disability; (ii) was otherwise qualified to participate in a school program; and (iii) was denied the benefits of the program or was otherwise subject to discrimination because of his disability." *Shadie v. Hazelton Area Sch. Dist.*, 580 Fed. Appx. 67, 70 (3rd Circ. 2014).

Plaintiffs contend Defendant did not meet K.S.'s needs as adequately as Defendant meets the needs of his nondisabled peers. (ECF No. 41 at 49). However, Plaintiffs provide no evidence to support that claim except stating Defendant did not offer a FAPE. (ECF No. 40 at 28). As the court has already determined above, *supra* part IV.B, Defendant did provide a FAPE. In fact, the record before this court does not support an assertion of discrimination as Defendant was responsive to both Plaintiffs and K.S.'s demonstrated weaknesses, and that there is ample evidence in the record to support that Defendant did not discriminate against K.S. in offering its May 16 2014 IEP. Therefore, this Court finds that Plaintiffs are not entitled to summary on its Section 504 discrimination claim.

## V. Conclusion.

For all of the reason's set forth above, this court finds for, and enters judgment in favor of, Defendant, and, Plaintiffs' Cross Motion for Summary Judgment and Attorney's Fees is denied.

_____
**JOSE L. LINARES**
Chief Judge, United States District Court

Date: September 18, 2017